UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

| | |
|---|---|
| PAMELA POLLARD, STACY M. BLECHINGER, ARTHUR H. SIGMUND, <br><br> Plaintiffs, <br><br> v. <br><br> GPM INVESTMENTS, LLC d/b/a FAS MART, <br><br> Defendant. | Action No. 3:10−CV−115 |

## **MEMORANDUM OPINION**

THIS MATTER is before the Court on Defendant's Motion for Summary Judgment. (Doc. No. 22.) Defendant moves the Court to enter summary judgment in its favor pursuant to Rule 56 of the Federal Rules of Civil Procedure. For the reasons stated below, the Motion for Summary Judgment is HEREBY GRANTED.

I. **BACKGROUND**

Plaintiffs allege Defendant GPM Investments, LLC d/b/a Fas Mart ("Defendant" or "Fas Mart") violated the overtime pay provisions of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq*. Plaintiffs contend Defendant intentionally or recklessly failed to pay them overtime for each hour worked over forty hours per week after improperly classifying them as exempt under the FLSA's executive exemption.

A. Pamela Pollard

Pamela Pollard ("Pollard") worked as a Fas Mart store manager from December 2007 until November 2009. Pollard's district manager told her the job required fifty-two hours per week, but that there would be times when she would have to work longer hours. Pollard initially received a biweekly salary of $ 1,143, which was increased to $ 1,173. She also received performance-based bonuses for which other employees were not eligible.

Pollard began her tenure with Fas Mart at Store 75, where she supervised four employees, and eventually moved to Store 80, where she supervised four employees. Pollard's district manager visited her store once a week for approximately one half hour. Fas Mart has a list of thirty-two responsibilities for exempt, salaried store managers. Pollard performed each task. Pollard interviewed prospective employees. If she did not like the applicant, the application process ended for that person. Pollard hired and trained two or three new employees between 2007 and 2009. Pollard fired one employee who wrongfully clocked out in the middle of a shift and communicated the termination decision to another employee whom the district manager decided to terminate.

Pollard created employee work schedules, though she did not have as much flexibility in scheduling as she would have liked, as her store was understaffed. Pollard also evaluated employees and gave the evaluations to her district manager. Pollard subsequently discussed her evaluations with the employees. Further, Pollard's job responsibilities included directing employee tasks; disciplining employees with verbal or written warnings; handling visits from the Alcoholic Beverage Control Board ("ABC Board") and Department of Environmental Quality ("DEQ"); conducting daily store walks to check for damage and analyze inventory; making sure merchandise was laid out in accordance

with the store's planogram; discussing with her district manager methods of improving the store's sales performance; counting the cigarette inventory twice daily to minimize theft; researching competitors' merchandise and gasoline prices; and counting, depositing, and safekeeping the store's money. Pollard estimates twenty percent of her time was spent on management duties and states that her management activities overlapped with non-management work.

    B. <u>Stacy Blechinger</u>

Stacy Blechinger ("Blechinger") began working for Fas Mart as a deli manager in October 2008. Her annual salary ranged from $ 27,000 to $ 30,000. Blechinger was eligible for bonuses if she met certain inventory, sales, and labor goals, and her medical benefits were better than other deli employees' benefits. Blechinger was told she was expected to work fifty-two hours per week. Blechinger trained for the deli manager position for approximately one month. After training, Blechinger took a test to determine if she had knowledge of proper deli procedures and scored ninety-eight percent. Fas Mart has a list of thirty-nine tasks for which deli managers are responsible. Blechinger testified that this list accurately described her responsibilities and that she performed each task with the exception of changing prices. Blechinger supervised a staff of ten to twelve deli employees.

Blechinger was involved in hiring and training new employees. She conducted initial interviews of prospective employees and gave her opinions to the store and district managers. After an employee was hired, Blechinger showed the employee proper deli procedures and monitored his or her work. Blechinger directed deli employees' tasks and monitored employee performance while completing her own daily tasks. Blechinger was also involved in employee discipline. If she encountered a problem with an employee, she

first issued a verbal warning. If the employee's behavior did not improve, Blechinger had a formal discussion with the employee. In addition to hiring and disciplining employees, Blechinger evaluated employee performance. She prepared the initial performance appraisals for deli employees and gave them to her store manager, who sent them to the district manager. After receiving feedback from the district manager, Blechinger and her store manager conducted performance appraisals with employees. Blechinger created employee work schedules and maintained the deli's labor budget, which required her to keep track of deli employees' hours and adjust work schedules to stay within her budget. Finally, Blechinger was responsible for deli inventory. She analyzed upcoming store promotions that could affect deli sales and submitted deli orders to her store manager. The store manager finalized the orders. When the orders arrived at the store, Blechinger checked the products, examined the accuracy of the shipment, and reported any discrepancies.

    C. <u>Arthur Sigmund</u>

Arthur Sigmund ("Sigmund") began working as a Fas Mart deli manager in May 2007. His initial salary was $ 650 per week, which was raised to $ 675 per week. Sigmund was expected to work between forty-eight and fifty-two hours per week and was eligible for performance-based bonuses not available to other employees.

Sigmund typically supervised four deli employees each week. He prepared work schedules and submitted them to his store manager for approval. Sigmund interviewed prospective employees and provided feedback to the store manager, who could conduct a second interview. Sigmund trained and evaluated deli employees. He served as point person for health inspections and was responsible for tracking his store's waste and

analyzing methods of reducing waste. He also ordered food for the deli. Sigmund attended meetings with other deli managers to discuss deli-related issues as well as trade shows at which vendors would highlight different products.

d. <u>Fas Mart's Determination of Employees' Exempt Status</u>

Store and deli managers are salaried employees expected to work fifty-two hours per week. Their pay remains the same if they work more or less than fifty-two hours each week. Fas Mart's Senior Vice President of Human Resources, Allan Ritchie ("Ritchie"), determines which Fas Mart employees are classified as exempt. The company's chief executive officer and attorney approve classification decisions. In determining whether an employee should be exempt, Ritchie considers the store's sales volume and the employee's responsibilities.

Fas Mart uses policies and guidelines implemented by the Department of Labor in determining which employees are exempt. The store manager's exemption is based on job duties. Fas Mart classifies deli managers as exempt only if they work in a level four, five, or six store. This ensures the deli manager has enough employees to qualify for the exemption.

II. **LEGAL STANDARD**

A motion for summary judgment should be granted where "[t]here is no genuine issue as to any material fact" and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c)(2). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986). The moving party bears the burden of

5

establishing the nonexistence of a triable issue of fact by "showing . . . that there is an absence of evidence to support the nonmoving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).

A court may consider the parties' pleadings, discovery materials, and affidavits to determine if a triable issue exists. Fed. R. Civ. P. 56(c)(2). "Summary judgment is appropriate only where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." Nat'l Ass'n of Gov't Emps. v. Fed. Labor Relations Auth., 830 F. Supp. 889, 897 (E.D. Va. 1993) (internal citation omitted). All "factual disputes and any competing, rational inferences [are resolved] in the light most favorable to the party opposing [the] motion." Rossignol v. Voorhaar, 316 F.3d 516, 523 (4th Cir. 2003) (internal citation and quotation marks omitted).

### III. DISCUSSION

Defendant's Motion sets forth ninety-seven undisputed facts. Plaintiffs challenge thirty facts. Plaintiffs' objections, however, are not sufficient to create triable issues. Plaintiffs also set forth sixty disputed facts. A comparison of the Plaintiffs' and Defendant's facts, however, reveals that twenty-two of those facts are not actually in dispute. Of the remaining thirty-eight facts, none are material to the issue of whether Plaintiffs are exempt executives under the FLSA. Because there are no material facts in dispute, the Court must decide only if Defendant is entitled to judgment as a matter of law.

    a. <u>Fair Labor Standards Act</u>

The FLSA requires employers to pay employees time and a half for all hours worked over forty each week. 29 U.S.C. § 207(a)(1). There is, however, an exemption which provides that minimum wage and maximum hour requirements do not apply to "[a]ny

6

employee employed in a bona fide executive, administrative, or professional capacity[.]" 29 U.S.C. § 213(a)(1). An employer must establish by clear and convincing evidence that an employee qualifies for exemption. Shockley v. City of Newport News, 997 F.2d 18, 21 (4th Cir. 1993).

Department of Labor regulations state that the exemption applies to any employee:

> (1) Compensated on a salary basis at a rate of not less than $ 455 per week . . . exclusive of board, lodging or other facilities;
>
> (2) Whose primary duty is management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof;
>
> (3) Who customarily and regularly directs the work of two or more other employees; and
>
> (4) Who has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight.

29 C.F.R. § 541.100(a).

### i. Plaintiffs' Salaries Exceed FLSA Base

The salary requirement is met if an employee makes $ 455 weekly, $ 910 biweekly or $ 1,971.66 monthly. 29 C.F.R. § 541.600(b). Each Plaintiff meets the salary requirements. Pollard's biweekly salary ranged from $ 1,143 to $ 1,173. Blechinger received $ 1,153 biweekly. Sigmund's weekly salary ranged from $ 650 - $ 675. Because each Plaintiff meets the requirements, the first factor of the executive exemption standard is satisfied.

### ii. Management is Plaintiffs' Primary Duty

"Management" means, among other things

> activities such as interviewing, selecting, and training of employees; setting and adjusting their rates of pay and hours of work; directing the work of employees; maintaining production or sales records for use in supervision or

> control; appraising employees' productivity and efficiency for the purpose of recommending promotions or other changes in status; handling employee complaints and grievances; disciplining employees; planning the work; determining the techniques to be used; apportioning the work among the employees; determining the type of materials, supplies, machinery, equipment or tools to be used or merchandise to be bought, stocked and sold; controlling the flow and distribution of materials or merchandise and supplies; providing for the safety and security of the employees or the property; planning and controlling the budget; and monitoring or implementing legal compliance measures.

29 C.F.R. § 541.102. Performance of nonexempt work contemporaneous with exempt work does not disqualify an employee from exempt status as long as the other requirements for exemption are satisfied. 29 C.F.R. § 541.106(a).

Pollard testified that she created employee work schedules; interviewed and trained new employees; directed employees' tasks; disciplined employees; served as the point person for ABC and DEQ inspections; implemented the store's planogram; ordered and checked in inventory for her store; and counted cigarettes to prevent employee theft. Pollard also received calls at home about store robberies and customer complaints.

Blechinger testified that she trained new employees; disciplined employees by giving verbal warnings, having formal discussions, and writing them up; recommended that the store or district manager discipline employees; submitted inventory orders to her store manager; maintained waste records; scheduled employees to work the deli; kept track of actual hours worked; and directed employee tasks.

Sigmund testified that he created employee work schedules; directed employee tasks; trained employees; discussed customer service, waste management, sanitation, and timeliness with deli employees; discussed employee performance with the store manager; ordered food for the deli; tracked employee hours; and attended deli manager meetings.

Pollard performed each responsibility listed on Fas Mart's job description for store managers, many of which comport with tasks described in the regulations. Similarly, Blechinger performed all tasks with the exception of one listed in the job description for deli managers. The tasks Sigmund described are similar to those described by Pollard and Blechinger and, consequently, can be fairly described as "management." As such, it is clear to the Court that Plaintiffs engaged in management. The question that remains is whether management was Plaintiffs' primary duty. The Court finds that it was.

An employee's "primary duty" is the "[p]rincipal, main, major or most important duty that the employee performs." 29 C.F.R. § 541.700(a). Factors considered in determining an employee's primary duty include

> [t]he relative importance of the exempt duties as compared with other types of duties; the amount of time spent performing exempt work; the employee's relative freedom from direct supervision; and the relationship between the employee's salary and the wages paid to other employees for the kind of nonexempt work performed by the employee."

Id. While the amount of time an employee spends performing exempt work can be helpful in determining if exempt work is his or her primary duty, time alone is not a dispositive factor. 29 C.F.R. § 541.700(b). Defendant maintains management was Plaintiffs' primary duty because their facilities could not operate if they did not perform managerial tasks.

This Court previously granted summary judgment in favor of a defendant in a case with facts similar to the instant one after deciding the plaintiff was properly classified as an exempt executive. Haines v. S. Retailers, 939 F. Supp. 441 (E.D. Va. 1996). The issue in Haines was whether management was the plaintiff's primary duty. The Court ultimately decided that management was her primary duty even though she spent the majority of her time performing non-exempt functions because: (1) the managerial duties were integral to

the success of the convenience store where she worked; (2) she spent sufficient time performing managerial duties; (3) she had sufficient discretionary power; and (4) she made more money than hourly employees who worked the same number of hours. Id. at 448-51.

Plaintiffs argue that summary judgment is inappropriate because the question of primary duty is one for a jury. See Barreto v. Davie Marketplace, LLC, 331 Fed. Appx. 672, 676 n.1 (11th Cir. 2009) ("[w]here an employee spends the majority of his time on non-exempt work and has admittedly few managerial-type obligations, there is at least a factual question as to whether the non-exempt duties are comparatively more important than the exempt duties. Such determinations of fact in the face of conflicting evidence are within the exclusive province of the jury."). Plaintiffs contend that their non-managerial duties were more important than their managerial duties. Plaintiffs argue that if their managerial duties were indispensable, Fas Mart would have allowed them to close the store or deli and focus on managerial tasks, instead of attempting to do managerial and non-managerial work contemporaneously. Further, Plaintiffs argue, each of their job descriptions contemplated that they would perform manual labor duties also performed by other employees.

Plaintiffs also argue that the 29 C.F.R. § 541.700(a) factors counsel against exemption.

### 1. *Relative Importance of Exempt Duties*

Defendant contends management was Plaintiffs' primary duty. Ritchie testified that store managers perform a host of tasks, without which Fas Mart stores could not operate. Specifically, Ritchie stated that it is almost impossible to run a Fas Mart store without a store manager who performs tasks such as scheduling employees, hiring and firing

employees, training and disciplining employees, handling customer complaints, and taking care of compliance issues. Ritchie also stated that managers are constantly assessing their stores, which is integral to a store's success. Ritchie stated that deli managers oversee deli workers, make sure delis are properly staffed, and provide feedback to deli employees. Ritchie believes it would not be possible to run a deli without the deli manager.

Courts determine how important exempt duties are by measuring "the significance of the managerial tasks to the success of the facility." Haines, 939 F. Supp at 450. The Fourth Circuit held in Jones v. Virginia Oil Company, Inc., 69 Fed. Appx. 633, 637 (4th Cir. 2003), that a convenience store manager who spent seventy-five to eighty percent of her time cooking burgers, serving ice cream, cleaning her store, working the cash register, stocking shelves, and sweeping the parking lot was properly classified as exempt. The court recognized that the plaintiff was also responsible for managerial tasks such as "hiring, scheduling, training, and disciplining employees, checking inventory and ordering supplies, handling customer complaints, counting daily receipts, and making bank deposits," without which the store could not operate. Id. at 638. The record currently before the Court indicates that, like the plaintiff in Jones, Plaintiffs' managerial duties in the instant case were integral to their stores' success, as the stores and delis could not have functioned properly without management. Accordingly, this factor counsels in favor exemption.

*2. Amount of Time Spent Performing Exempt Work*

Plaintiffs believe the time they spent performing managerial tasks suggests management was not their primary duty. Plaintiffs argue that there were times when they could not have been performing management and non-management duties concurrently. For Pollard, this was when she was out comparing prices of Fas Mart's competitors.

11

Blechinger and Sigmund could not manage employees while preparing food or cleaning and stocking the delis if they were the only employees in the delis.

Defendant argues that Plaintiffs spent sufficient time performing managerial tasks. Defendant argues that "time alone . . . is not the sole test" for determining if a persons' primary duty is management. 29 C.F.R. 541.700(b). Defendant asserts that the importance of Plaintiffs' tasks, not the time spent performing the tasks, should guide the Court in determining if management was Platinffs' primary duty.

Pollard testified that she spent twenty percent of her time doing exempt work. She also stated that she could perform management duties such as interviewing and training employees while performing non-exempt work. Blechinger spent approximately forty-five minutes per twelve hour shift doing exempt work. Like Pollard, she performed management tasks, such as correcting employees, while engaging in non-management tasks. Sigmund also stated that he performed management tasks while engaging in non-management tasks.

The time an employee spends performing exempt work is not dispositive on the primary duty issue. 29 C.F.R. § 541.700(b). Thus, even if a Plaintiff spends just a few hours each day, or twenty percent of her work week, on managerial tasks, she can be properly classified as exempt if she meets the other requirements for exemption. See Haines, 939 F. Supp. at 450. Further, a manager continues to engage in management duties if he or she supervises other employees or does other exempt work while performing non-exempt work. Jones, 69 Fed. Appx. at 637. Because each Plaintiff admitted to (1) spending a specified amount of time performing exempt work, and (2) supervising other employees

while performing non-exempt tasks, the Court finds that they spent sufficient time performing managerial tasks to justify the exemptions.

### 3. *Employee's Relative Freedom From Direct Supervision*

Plaintiffs argue that Pollard was not free from direct supervision because her district manager visited her store once each week. Pollard discussed store problems, low sales, overstocked items, employee discipline issues, and robberies with the district manager. She also talked to and received emails from the district manager throughout each week.

Plaintiffs argue that Sigmund and Blechinger had virtually no freedom from direct management. They could not hire, fire, or set pay rates for employees. Sigmund did not have authority to discipline employees and had to tell his store manager if he had a problem with an employee. Further, Sigmund's store manager could overrule any employment assessment Sigmund made. Blechinger's store manager often changed Blechinger's employee evaluations and inventory orders. The store manager would also supervise Blechinger in the deli. Plaintiffs argue that making recommendations or being involved in hiring, firing, and evaluating employees does not constitute exercising discretion.

Plaintiffs cite 29 C.F.R. § 541.704 for the proposition that "[e]xemptions are not available . . . for employees who simply apply well-established techniques or procedures described in manuals or other sources within closely prescribed limits to determine the correct response to an inquiry or set of circumstances." Plaintiffs believe that, because they had to follow certain Fas Mart procedures in performing their duties, they cannot be properly classified as exempt.

Defendant argues that Pollard was clearly free from direct supervision because a weekly visit from supervisors does not destroy an employee's exemption. Defendant also argues that Blechinger and Sigmund had relative freedom from direct supervision even though they both worked with their store and district managers.

Pollard's testimony indicates she had relative freedom from direct supervision. Her district manager visited her store approximately once a week for half an hour. The daily phone calls and emails from her district manager pertained only to gas prices. <u>See</u> Def. Ex. 1. Pollard could change an employee's work schedule upon employee request. She also had authority to discipline employees by writing them up or giving them a verbal warning without discussing the issue with superiors.

Sigmund testified that he did not have authority to discipline employees because he had to go to the store manager before an employee could be written up. He also testified that if an employee needed time off, he had to consult with his store manager before calling in a substitute employee. Further, Sigmund was not authorized to issue refunds to customers unhappy with their deli purchases.

Blechinger and Pollard's testimony indicates that they had fairly significant freedom from direct supervision. Because Pollard was the most senior person on site for the vast majority of the work week, it is clear that she was vested with enough discretionary power to qualify for the exemption. <u>See</u> <u>Jones</u>, 69 Fed. Appx. at 638. Sigmund's testimony reveals that he did not have as much freedom from direct supervision. This factor alone, however, will not prevent Sigmund from being properly classified as an exempt employee, as courts uniformly reject arguments that an employee cannot be an exempt executive if he cannot make hiring or firing decisions or is subject to rigid supervision. <u>Haines</u>, 939 F. Supp. at 450

(citing Murray v. Stuckey's Inc., 939 F.2d 614 (8th Cir. 1991); Donovan v. Burger King Corp., 672 F.2d 221 (1st Cir. 1982); Meyer v. Worsley Cos., 881 F. Supp. 1014 (E.D.N.C. 1994); Horne v. Crown Cent. Petroleum, Inc., 775 F. Supp. 189 (D.S.C. 1991)). Accordingly, the Court finds Plaintiffs had sufficient freedom from direct supervision.

        4.   *Relationship Between Employee's Salary and Wages Paid to Other Employees for Nonexempt Work*

Plaintiffs argue that the disparity between their salaries and other Fas Mart employees' wages suggests they should not be exempt employees. Pollard worked twelve hours a day, six days per week. With a biweekly salary of $ 1,173, her hourly rate was $ 8.15. Fas Mart cashiers earn $ 7.50 per hour. Plaintiffs argue that all hours worked must be accounted for when determining an employee's hourly rate. See Jones, 69 Fed. Appx. at 639. Non-managerial employees who work seventy-two hours per week, as Pollard did, could make up to $ 660 per week, or $ 1,320 biweekly, because they are eligible for overtime pay. The most Pollard ever made was $1,173 biweekly. Thus, an hourly worker who works the same number of hours as Pollard would actually make more money than Pollard.

Defendant points out that Plaintiffs were eligible for bonuses that other employees could not receive and received better health benefits. Thus, Plaintiffs were compensated better than their subordinates.

Each Plaintiff testified that he or she received bonuses for which other employees were not eligible. Pollard and Blechinger testified that their medical benefits were better than non-managerial workers. Thus, even if an hourly worker who worked Plaintiffs' hours could make more money, those employees are not eligible for the bonuses and other benefits Plaintiffs received. Accordingly, this factor counsels in favor of exemption.

### iii. *Plaintiffs Customarily and Regularly Directed Two or More Employees*

An exempt employee customarily and regularly directs the work of at least two other employees if he or she supervises two or more full time employees or the equivalent thereof. 29 C.F.R. § 541.104(a). An employee who assists a manager and supervises only in the manager's absence does not qualify. 29 C.F.R. § 541.104(c).

Defendant argues that Pollard customarily and regularly directed the work of at least two employees, as she supervised four employees at Store 75 and four employees at Store 80. Although Pollard sometimes worked alone in her store, or with just one other employee, Defendant argues that she remains eligible for the FLSA exemption because a store manager does not have to physically supervise two full-time employees to qualify for the exemption. See Haines, 939 F. Supp. at 446 ("[i]t is not required that the executive employee be actually present at the store at the time the other employees are working to be 'supervising' them."). Because Pollard was responsible for policy compliance, employee productivity, setting and adjusting schedules, and "supervising," regardless of whether she physically supervised her employees, Defendant believes Pollard meets the FLSA's supervision requirements. Defendant argues that Blechinger and Sigmund also customarily and regularly directed the work of two or more employees. Specifically, Blechinger supervised ten to twelve deli employees, and Sigmund supervised four deli employees.

Plaintiffs submit that Pollard should not be considered an exempt employee because neither of her stores was classified as a level four, five, or six store. Plaintiffs submitted an e-mail from Ritchie indicating certain employees in store levels one, two, and three could never be classified as exempt. What Plaintiffs failed to mention is that the email actually

states that store managers can always be considered exempt employees. See Pls. Ex. E. Thus, it is clear that a store manager is able to supervise two or more employees in any store, and Plaintiffs' argument must fail. Because each Plaintiff testified to supervising at least two employees, the Court finds that Plaintiffs regularly and customarily directed the work of two or more employees, thereby justifying their exemptions.

      *iv. Plaintiffs had Sufficient Authority to Hire or Fire Other Employees*

Plaintiffs argue that they did not have authority to hire or fire Fas Mart employees. While Pollard communicated job offers and termination notices, someone else made the hiring and firing decisions. Sigmund and Blechinger did not have authority to hire or fire.

Defendant maintains that Pollard had sufficient authority to hire and fire and that her recommendations and suggestions as to hiring and firing were given sufficient weight. Defendant similarly argues that Blechinger and Sigmund meet this requirement because they were involved in the hiring process. Blechinger and Sigmund interviewed prospective employees and evaluated current employees. While neither made final hiring decisions, Defendant believes their opinions played a role in store and district managers' decisions. Further, Defendant argues that Blechinger's and Sigmund's employee evaluations impacted whether employees received advancements, promotions, or other changes in status. Thus, Defendant argues, Blechinger and Sigmund had enough input in the decision making process to justify the exempt status.

A bona fide executive is an employee who has authority to hire or fire other employees or whose recommendations as to hiring, firing, advancement, promotion, or other changes in status are given "particular weight." 29 C.F.R. § 541.100(a)(4). Factors considered in determining if an employee's recommendations are given particular weight

include: (1) whether it is within the employee's job description to make such recommendations; (2) the frequency with which the employee's recommendations are requested; and (3) the frequency with which the employee's recommendations are relied upon. 29 C.F.R. § 541.105. A recommendation may have particular weight even if "[a] higher level manager's recommendation has more importance and even if the employee does not have authority to make the ultimate decision as to the employee's change in status." Id.

Pollard interviewed all prospective employees and the candidates she liked got a second interview with the district manager. If Pollard did not like the candidate, he or she did not continue in the process. Pollard hired at least two employees and fired two. Pollard also evaluated each store employee and her evaluations determined whether employees received a raise. Blechinger also interviewed prospective employees. If she liked the person, the district manager would conduct a second interview. Blechinger's employee reviews were considered before an employee received a raise. Like Pollard and Blechinger, Sigmund recommended employees and at least one person he recommended was hired. Thus, the Court finds that each Plaintiff had sufficient input in the hiring, firing, and promotions process to justify their exemptions.

### IV. CONCLUSION

For the reasons stated above, the Court finds that Defendant properly classified each Plaintiff as an exempt executive employee. Accordingly, the Court GRANTS Defendant's Motion for Summary Judgment.

Let the Clerk send a copy of this Memorandum Opinion to all counsel of record.

An appropriate Order shall issue.

>     _____/s/_____
>     James R. Spencer
>     Chief United States District Judge

ENTERED this ___10th____ day of March 2011